483 F.2d 418
 84 L.R.R.M. (BNA) 2043, 72 Lab.Cas. P 13,894
 AFFILIATED FOOD DISTRIBUTORS, INC., Appellant,
v.
LOCAL UNION NO. 229, Affiliated with the International
Brotherhood of Teamsters, Chauffeurs, Warehousemen
and Helpers of America, Appellee.
 No. 72-1855.
 United States Court of Appeals,
Third Circuit.
 Submitted May 24, 1973.
Decided Aug. 14, 1973.
 
 1
 Melvin S. Katzman, Jackson, Lewis, Schnitzler & Krupman, New York City, for appellant.
 
 
 2
 John J. Dunn, Sr., Scranton, Pa., for appellee.
 
 
 3
 Before ALDISERT and ADAMS, Circuit Judges, and STAPLETON, District Judge.
 
 OPINION OF THE COURT
 
 4
 STAPLETON, District Judge.
 
 
 5
 The sole question on this appeal is whether the appellant-employer is bound to arbitrate its damage claim against the appellee-union for breach of a nostrike clause. Appellant, Affiliated Food Distributors, Inc. ("Affiliated") brought this action pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C.A. Sec. 185 (1965). On motion of the appellee, Local Union No. 229, the district court ordered a stay of the action pending arbitration. Affiliated appealed from this interlocutory order,[1] and urges that the collective bargaining agreement between the parties does not require arbitration of its damage claim. We agree and reverse.
 
 
 6
 There is a clear congressional policy favoring private, extra-judicial resolution of labor-management disputes.[2] In furtherance of this policy, the Supreme Court of the United States issued the following mandate in United Steel Workers of America v. Warrior and Gulf Nav. Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960):
 
 
 7
 An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.
 
 
 8
 However, even in the presence of this clear congressional policy, it remains the rule that parties are bound to arbitrate only those disputes which, under a fair construction of their collective bargaining agreement, they have bound themselves to arbitrate. As the Supreme Court noted in Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462 (1962):
 
 
 9
 Under our decisions, whether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties. . . . "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."
 
 
 10
 At the heart of this matter, therefore, is the intention of the parties when they negotiated and signed their collective bargaining agreement. The parties chose the following words to evidence their agreement regarding arbitration:
 
 Article XXIII-Arbitration
 
 11
 Any difference, grievance, or dispute between the Company and the Union arising out of, or relating to this Agreement, or its interpretation or application, or the enforcement thereof, except as otherwise specifically provided herein, shall be subject to the following procedure:
 
 
 12
 A. Any grievance which arises may be taken up by the Union Steward(s) with a representative of the department involved, or with an official of the Company. Grievances must be presented in writing.
 
 
 13
 B. In the event that the grievance should not have been resolved within three (3) working days, the Business Representative of the Union shall take the subject matter up with the Employer. If the Business Representative of the Union and the Employer cannot reach a satisfactory agreement within three (3) working days, the subject matter shall be referred to arbitration immediately. The arbitrator may be selected by mutual agreement between the Company and the Union. If no agreement is reached on the selection of the arbitrator within five (5) days, the arbitrator shall be selected from a panel of the American Arbitration Association.
 
 
 14
 It is to be clearly understood that the Arbitrator shall not have the power to alter any of the terms of the Agreement. Decisions of the Arbitration Board shall be final and binding on both parties. Pending the decision of the Arbitration Board, the Union will not permit any strikes or interferences with the regular routine of business. The cost of the arbitrator shall be borne equally by the parties to this Agreement.
 
 
 15
 The court below observed that "the preamble clause in and of itself is broad enough to cover the issue of whether there was a violation of the no-strike clause." It then noted Affiliated's contention that "the procedure through which 'any difference, grievance or dispute' must pass provides only for the initiation of Union grievances." The district court concluded, however, that the contract provisions relating to procedure did not "supply the 'positive assurance' requisite to deny the defendant's motion to stay." It held:
 
 
 16
 After careful study of the arbitration clause presented here as well as the cases which have attempted to interpret similar clauses, we are unable to ascertain the true intent of the parties and therefore hold that since it is not certain that the company's claim for damages resulting from a violation of the no-strike clause is not subject to arbitration, the Union's motion to stay must be granted.
 
 
 17
 The principle that doubt should be resolved in favor of arbitration does not relieve a court of the responsibility of applying traditional principles of contract interpretation in an effort to ascertain the intention of the contracting parties.[3] When a contract, fairly read with these principles in mind, is susceptible of a construction that dictates arbitration, the congressional policy favoring that form of dispute resolution may require the denial of judicial relief despite the possibility of fairly reading the contract to evidence a contrary intent.[4] But, there is no occasion to resort to this congressional policy in a case where the contract, fairly read as a whole, is not susceptible of a construction that the parties bound themselves to arbitrate the dispute before the court. We conclude that this is such a case.
 
 
 18
 It is, of course, well established that contract language must be read in context and that "a subsequent specification impliedly limits the meaning of a preceding generalization."[5] A careful reading of this agreement and an application of these principles to it, lead us to the firm conviction that the parties bound themselves to arbitrate only employee grievances. Article XXIII does not state that "any difference, grievance or dispute . . . arising out of, or relating to this agreement, or its interpretation or application or the enforcement thereof" shall be the subject of arbitration. Rather it provides that any such difference, grievance or dispute "shall be subject to the following procedure." The procedure that follows, as articulated in paragraphs A and B can fairly be read only as applying to employee grievances.
 
 
 19
 These paragraphs specify three successive steps in an arbitration process. "The grievance" referred to in the first sentence of paragraph B must be the written grievance presented pursuant to paragraph A and the third party-arbitrator provisions of the second sentence of paragraph B, read in context, must refer to grievances unresolved after the two preceding steps.
 
 
 20
 Initially, any grievance "may be taken up by the Union Steward(s) with a representative of the department involved, or with an official of the Company." At the second stage, "the Business Representative of the Union shall take the subject matter up with the Employer." Thus, at both stages the initiative is with the union. It would be a strained construction at best which would attribute to the parties the thought that a company official would refer an employer's grievance to a union steward who would, in turn, refer the grievance to "a representative of the department involved" or to "an official of the company".
 
 
 21
 In short, we think it may be said with positive assurance, as in Atkinson, that the arbitration clause of this collective bargaining agreement is not susceptible of a fair construction that the parties bound themselves to arbitrate employer grievances of the kind here involved.[6]
 
 
 22
 The order of the district court granting appellee's motion to stay will be vacated and this case will be remanded for further proceeding consistent with the views we have here expressed.
 
 ADAMS, Circuit Judge (dissenting):
 
 23
 A different understanding of the mandate of United Steelworkers of America v. Warrior & Gulf Nav. Co.[1] and the application of that mandate to the present case compels this dissent.
 
 
 24
 The district court, confronted with the employer's suit seeking damages from the union for violation of a no-strike clause, stayed that action pending arbitration.[2] The majority, holding that the terms of the collective bargaining agreement did not require the employer to submit its claim to arbitration, reversed the district court. I believe that the collective bargaining agreement, read with the admonitions of Warrior & Gulf firmly in mind, requires that this dispute be submitted to arbitration. Therefore, I would affirm the district court.
 
 
 25
 As the majority points out, the arbitration clause of the collective bargaining agreement controls the determination whether or not a particular type of dispute is to be arbitrated.[3] Explicit language in the agreement committing a question to arbitration or withholding it from arbitration is determinative.[4] It is in the absence of such specificity that problems arise. Such is the situation here.
 
 
 26
 Warrior & Gulf" states the Supreme Court's basic understanding of Congress' philosophy in favor of resolution of disputes through the machinery of arbitration.[5]
 
 
 27
 To achieve the Congressionally required end, the Supreme Court has promulgated strict rules for the interpretation of the collective bargaining agreement.
 
 
 28
 "Apart from matters that the parties specifically exclude, all of the questions on which the parties disagree must therefore come within the scope of the grievance and arbitration provisions of the collective agreement."[6]
 
 
 
 * * *
 "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.[7]
 
 
 
 29
 * * *
 
 
 30
 "In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad."[8]
 
 
 31
 Rules of contract construction applicable in a normal commercial context are to be eschewed in the interpretation of the arbitration clause of a collective bargaining agreement.[9]
 
 
 32
 It is against these dictates of Warrior & Gulf that the arbitration clause of the collective bargaining agreement in issue must be measured. First, Article XXIII is titled "Arbitration," not "Grievance Procedure."[10] Second, the preamble of Article XXIII, by its terms, includes "Any difference, grievance, or dispute between the Company and the Union. . . ." However, as the majority points out, the procedures outlined in paragraphs A and B of Article XXIII appear to be directed towards the resolution of employee grievances. Applying "traditional principles of contract interpretation," the majority concludes that the presence of the detailed procedure gives "positive assurance" that the arbitration clause "is not susceptible to a fair construction that the parties bound themselves to arbitrate employer grievances of the kind here involved." I do not believe that Warrior & Gulf states that such a construction is dispositive. Rather, it appears to command that the arbitration clause be "not susceptible of an interpretation that covers the asserted dispute." (Emphasis added). The clause in question here, I believe, is susceptible to an interpretation that would cover the matter in dispute.[11]
 
 
 33
 Under the majority's interpretation of the arbitration clause of the collective bargaining agreement, only employee grievances would be included within the arbitration process. This would exclude all differences, grievances and disputes raised by the employer. Yet, these items are explicitly included in the arbitration Article. Such a combined construction would appear to be a limitation on the arbitration article arguably not warranted by the language of the Article. Indeed, the thrust of the preamble, as well as its specific language, indicates a more spacious role for arbitration. While the majority's interpretation might be the better one were ordinary rules of contractual construction applicable, the teachings of Warrior & Gulf require that if an ambiguity exists, and I believe that there is such an ambiguity, the clause must be interpreted to remit the parties to arbitration.
 
 
 34
 Analysis of cases dealing with the question of the sweep of an arbitration clause reveals that there are available to drafters of collective bargaining agreements an apparently limitless variety of combinations of headings, inclusions, exclusions and procedures. Detailed discussion of these cases is not fruitful in connection with our problem. Similarities to the present case and differences from the present case can be found in opinions holding that questions are within the arbitration clause and those holding that a question is without.[12] The conclusion that may properly be drawn is that each arbitration clause must be examined independently, with the mandates of Warrior & Gulf firmly in mind. Having done this, I believe that the issue raised in the district court is within the scope of the arbitration article of the collective bargaining agreement present here.
 
 
 35
 Accordingly, I respectfully dissent.
 
 
 
 [1]
 28 U.S.C.A. Sec. 1292(a)
 
 
 [2]
 29 U.S.C.A. Sec. 171 (1965)
 
 
 [3]
 G. T. Schjeldahl Co. v. Local Lodge 1680, 393 F.2d 502, 505 (1st Cir. 1968); Boeing Co. v. International Union, 370 F.2d 969 (3rd Cir. 1967); Illinois Bell Telephone Co. v. Local Union No. 399, 330 F.Supp. 302 (S.D.Ill.1971)
 
 
 [4]
 We are not here presented with the question of whether and under what circumstances a district court should consider tendered evidence other than the contract itself in attempting to determine whether there is "positive assurance" that arbitration was not contemplated by them. See Strauss v. Silvercup Bakers, Inc., 353 F.2d 555 (2nd Cir. 1965)
 
 
 [5]
 G. T. Schjeldahl Co. v. Local Lodge 1680, 393 F.2d 502, 504 (1st Cir. 1968)
 
 
 [6]
 Cf. Boeing Co. v. International Union, 370 F.2d 969 (3rd Cir. 1967); G. T. Schjeldahl Co. v. Local Lodge 1680, 393 F.2d 502, 505 (1st Cir. 1968)
 
 
 [1]
 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)
 
 
 [2]
 The damages claimed by the employer are for injury suffered from a strike occurring between November 1, 1971 and November 3, 1971
 
 
 [3]
 See Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962) quoted by the majority
 
 
 [4]
 See Independent Oil Workers at Paulsboro, N. J. v. Mobil Oil Corp., 441 F.2d 651 (3d Cir. 1971). In that case, this Court stated that the presence of a clause which provided that "'nothing in this agreement shall prevent' application to a court of competent jurisdiction" operates as "an 'escape' clause which nullifies the mandatory terms of the earlier language and makes arbitration optional." Id. at 653-654
 
 
 [5]
 United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)
 
 
 [6]
 Id. at 581, 80 S.Ct. at 1352. (Emphasis added.)
 
 
 [7]
 Id. at 582-583, 80 S.Ct. at 1353. (Emphasis added.)
 
 
 [8]
 Id. at 584-585, 80 S.Ct. at 1354. (Emphasis added.)
 
 
 [9]
 The Supreme Court in Warrior & Gulf stated:
 "In the commercial case, arbitration is the substitute for litigation. Here arbitration is the substitute for industrial strife. Since arbitration of labor disputes has quite different functions from arbitration under an ordinary commercial agreement, the hostility evinced by courts toward arbitration of commercial agreements has no place here." Id. at 578, 80 S.Ct. at 1351.
 
 
 [10]
 Compare G. T. Schjeldahl Co. v. Local Lodge 1680, International Association of Machinists, 393 F.2d 502 (1st Cir. 1968)
 
 
 [11]
 To the extent that the majority relied on language in this Court's opinion in Boeing Co. v. International Union, 370 F.2d 969 (3d Cir. 1967), for the proposition that a "fair construction" of the provision is the standard, I believe such reliance to be misplaced. First, the Supreme Court in Atkinson v. Sinclair Refining, supra, found that, regarding the arbitration clause in question there, "We think it unquestionably clear that the contract here involved is not susceptible to a construction that the company was bound to arbitrate." 370 U.S. at 241, 82 S.Ct. at 1321. (Emphasis added.)
 Moreover, this Court, in Boeing, held that "the arbitration clause is not susceptible of a construction that the plaintiff was bound to arbitrate." 370 F.2d at 971. (Emphasis added.)
 
 
 [12]
 See Atkinson & Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962); Drake Bakeries Inc. v. Local 50, American Bakery & Confectionery Workers International, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962); Independent Oil Workers at Paulsboro, N. J. v. Mobil Oil Co., 441 F.2d 651 (3d Cir. 1971); Boeing Co. v. International Union, 370 F.2d 969 (3d Cir. 1967); G. T. Schjeldahl Co. v. Local Lodge 1680, 393 F.2d 502 (1st Cir. 1968)