AMALGAMATED MEAT CUTTERS AND BUTCHER WORKMEN OF NORTH AMERICA, AFL–CIO, LOCAL NO. 295, Plaintiff,

v.

SERVOMATION CORPORATION, Defendant.

Civ. No. 75–723.

United States District Court, M. D. Pennsylvania.

Nov. 4, 1975.

---

Ira H. Weinstock, Handler, Gerger & Weinstock, Harrisburg, Pa., for plaintiff.

Earle K. Shawe, Wm. J. Rosenthal, John S. Williamson, III, Shawe & Rosenthal, Baltimore, Md., John H. Bream, Harrisburg, Pa. (Resident Counsel), for defendant.

## MEMORANDUM AND ORDER

**HERMAN, District Judge.**

Plaintiff has brought this action for violation of a contract between the Servomation Corporation and the Union pursuant to the provisions of § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a). The complaint alleges that defendant has violated the collective bargaining agreement between the parties in the defendant's refusal to submit a purported grievance to arbitration.

Plaintiff seeks an order compelling the defendant to arbitrate the grievance in accordance with its duties under the agreement, together with a request for attorneys' fees and court costs.

Defendant has filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) on several grounds which are discussed below.

Defendant first contends that plaintiff's complaint fails to state a claim upon which relief can be granted. Specifically, defendant alleges that the Union's grievance protests the defendant's refusal to recall seniority strikers after they had been permanently replaced by "probationers" during the course of an economic strike.

On November 18, 1975 the Union ended the strike and accepted defendant's final pre-strike contract proposal, effective December 1, 1974. The strike settlement failed to include plaintiff's request for reinstatement of strikers. Therefore, the defendant contends that plaintiff seeks to compel, by way of arbitration of a "grievance," that which it was unable to obtain through contract negotiations. Defendant contends that not only did the settlement agreement resolve the question as to reinstatement so as to estop plaintiff from presenting it as a grievance within the arbitration provision of the collective bargaining agreement, but in any event the alleged grievance occurred prior to the execution of the collective bargaining agreement and is unrelated to its "meaning, interpretation or application."

Plaintiff, on the other hand, urges the court to consider only the clear import of the language in the collective bargaining agreement concerning the scope of the arbitration and grievance procedures. Inasmuch as the settlement agreement was signed seven days prior to the date on which the parties entered into the collective bargaining agreement, plaintiff contends that such agreements are not contemporaneous and that therefore the settlement agreement should be excluded from our consideration by rea-

son of the parol evidence rule or the doctrine of merger. On the basis of the collective bargaining provisions above, plaintiff believes that the crux of its grievance is within the ambit of the arbitration and grievance provisions.

 Clearly, federal labor policy under the Labor Management Relations Act, 29 U.S.C. § 141, et seq. favors the arbitration of labor disputes. *Controlled Sanitation Corp. v. District 128 Of The Int'l Ass'n of Machinist and Aerospace Workers, AFL–CIO*, 524 F.2d 1324, 3d Cir., decided October 17, 1975. The law is also well-settled that while arbitration clauses contained in labor-management contracts should be construed as to effectuate congressional policy favoring the settlement of disputes, the duty to arbitrate is wholly contractual and that "a compulsory submission to arbitration cannot precede judicial determination that the collective bargaining agreement does in fact create such a duty." *John Wiley & Sons, Inc. v. Livingston*, 376 U. S. 543, 547, 84 S.Ct. 909, 913, 11 L.Ed.2d 898 (1964); *Boeing Co. v. Int'l Union, United Automobile, Aerospace and Agricultural Implement Workers*, 370 F.2d 969 (3d Cir. 1967). As it was stated in *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L. Ed.2d 1409 (1960), a part of the often-cited Steelworkers trilogy: [1]

"[T]he judicial inquiry under § 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made. An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." (footnote omitted)

The Supreme Court further noted that in the absence of any express provision excluding a particular grievance from arbitration, exclusion of a claim should only prevail where it is clear that such was the intent of the parties at the time they drafted their agreement. *Id.*, at 584–85, 80 S.Ct. 1347.

The Third Circuit court has held that despite the liberal rule of construction of arbitration clauses, recent United States Supreme Court decisions indicate that arbitration is not proper unless under a fair construction of the contract on its face, within the scope of the grievance and arbitration provisions of the collective bargaining agreement as viewed in light of traditional principles of contract interpretation, the parties bound themselves to arbitrate the issue. *Controlled Sanitation Corp. v. District 128 Of The Int'l Ass'n of Machinist and Aerospace Workers, supra; Affiliated Food Distributors, Inc. v. Local Union No. 229*, 483 F.2d 418, 420 (3d Cir. 1973). "In effect, there is a presumption in favor of arbitrability which should be dispelled only when the agreement explicitly exempts certain conduct from arbitration or when the terms of the agreement, read as a whole, clearly envision non-arbitrability." *Controlled Sanitation Corp., supra*, 524 F.2d at 1328.

The essential point of our inquiry then is as to the intention of the parties when they negotiated and signed their settlement agreement and collective bargaining agreement as expressed in the documents themselves. The pertinent sections of the settlement agreement provide:

"I. That the collective bargaining agreement embracing all terms and conditions of the Company's final offer (proposal of September 6, 1974)

I. *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co., supra*; and *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

shall be effective December 1, 1974, and remain in effect through December 1, 1975.

\* \* \* \* \* \*

"III. [A]ll persons listed therein [list of permanently replaced strikers who have not resigned] shall be considered, effective November 21, 1974, as having been laid off for lack of work under the collective bargaining agreement, with rights to recall and other attendant rights co-extensive with the provisions of that agreement applicable to persons laid off for lack of work."

Article III, Section 1 of the collective bargaining agreement provides that:

"Management of the plant and the direction of the working force, including the right to hire, assign, suspend, transfer, promote, discharge or discipline for just cause, and to maintain discipline and efficiency of its employees; and the right to relieve employees from duty because of lack of work or for other legitimate reasons . . . is vested exclusively in the Company."

Section 2 of Article III of the contract further stipulates that:

"If any employee feels aggrieved by any action of the Company made pursuant to this Article, he shall have recourse to the grievance procedure, hereinafter set forth in this Agreement, entitled 'Grievance Procedure.'"

Article VIII includes the provisions relating to seniority. And Article XIV contains the procedures agreed upon for grievance and arbitration, stating in pertinent part, that:

"All disputes between the Company and the Union during the term of this Agreement which concern the meaning, interpretation or application of the provisions of this Agreement are subject to the grievance and arbitration procedures herein. . . ."

■■ The cases relied upon [2] by the Union in support of its position that the terms of the settlement agreement may not be considered by the court are not instructive in the present case. These cases concern only one agreement and attempts by one of the parties to adduce evidence of negotiations and the bargaining history of a substantive provision of the contract not directly relating to the scope of grievance and arbitration procedures. The Third Circuit properly held that such matters of contract interpretation went to the merits of the grievance and not to the arbitrability of the grievance, and were therefore solely within the realm of the arbitrator's decision. This authority is inapposite to the case before us in light of its factual context. In our case the Union contends that the settlement agreement is an antecedent agreement to the collective bargaining contract and therefore is either to be excluded from evidence by reason of the parol evidence rule or is extinguished by the collective bargaining agreement under the doctrine of merger. We conclude that these contentions are not well taken.

A case similar to the one before us was considered in *Radio Corp. of America. v. Ass'n of Scientists & Prof. Engineering P.* (hereinafter referred to as R.C.A.), 414 F.2d 893 (3d Cir. 1969) by the Third Circuit. The *R.C.A.* case concerned a settlement agreement which reinstated in full force and effect a collective bargaining agreement for a period of three years after it had expired. Following the end of a strike by the union over collective bargaining negotiations which had failed to produce a mutually agreeable solution to a layoff procedure dispute, the union filed a grievance challenging the institution by

2. *Local 719, American Bakery and Confectionery Workers of America, AFL–CIO v. Natl. Biscuit Co.*, 378 F.2d 918 (3d Cir. 1967) ; *Communications Workers of America v. Bell Telephone Lab., Inc.*, 349 F.2d 398 (3d Cir. 1965) ; and, *Assoc. of Westinghouse Salaried Employees v. Westinghouse Electric Corp.*, 283 F.2d 93 (3d Cir. 1960).

the company of its own unilateral revisions of the layoff provisions as embodied in the company's last proposal during the negotiations. In determining whether the dispute was within the ambit of the grievance and arbitration provisions of the reinstated collective bargaining agreement, the Third Circuit court considered the settlement agreement and contemporaneously signed letter agreements as well as the explicit provisions in the contract for grievance and arbitration. While in the present case the settlement agreement incorporates a newly-created collective bargaining agreement to be entered into by the parties,[3] rather than reinstating a presently existing one, both this case and the R.C.A. case entail the situation where one agreement incorporates and adopts a second separate agreement. In that sense, both agreements in each case were contemporaneously entered into, even though in fact the second agreement was signed either one week later or three years previously, respectively. Accordingly, the settlement agreement is proper evidence by which the court can construe the interpretation of the grievance and arbitration provision of the collective bargaining contract. The settlement agreement and collective bargaining agreement are, in effect, contemporaneous and must be considered together in determining the scope of the arbitration provision, thereby precluding applicability of the parol evidence rule. Furthermore, although the collective bargaining agreement was entered into pursuant to the understanding reached in the settlement agreement one week before, the merger doctrine does not pertain to this case because the subsequent contract does not subsume the first agreement completely; the collective bargaining agreement does not provide for the status of the permanently replaced strikers to be that of workers laid off for lack of work as is stipulated in the initial settlement agreement.

■ As concerns the question of whether or not the issue of the reinstatement of permanently replaced workers under seniority provisions of the contract constitutes a valid and viable grievance subject to arbitration under the contract, defendant would have the court review the terms of the settlement agreement, under the authority of R.C.A., in order to establish that the agreement resolves the issue finally and prevents it from becoming a further grievance. The essence of the defendant's argument does not appear to be that this type of grievance is not arbitrable under the collective bargaining agreement, but rather that this specific grievance was resolved by the prior settlement agreement and is therefore no longer arbitrable. Our duty is merely to determine the scope of arbitration as agreed upon by the parties in the contract as a whole; the United States Supreme Court has mandated that the merits of the case is a question to be decided by arbitration.[4] Narrowing our inquiry in this regard, we find that neither the settlement agreement nor the collective bargaining agreement involved in the present case contains any language which expressly or impliedly excludes the rights of the laid-off employees from the purview of arbitration under the collective bargaining agreement. In the

3. The settlement agreement of November 25, 1974 provides in pertinent part that the Company and Union "do hereby agree to the following: I. That the collective bargaining agreement embracing all terms and conditions of the Company's final offer (proposal of September 6, 1974) shall be effective December 1, 1974, and remain in effect through December 1, 1975."

4. In *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 567-8, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960), the Court stated: ". . . the function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. . . ."

absence of any specific exclusion of arbitration, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." To the contrary in the present case, the settlement agreement specifically provides that the permanently replaced workers who have not retired are assigned the status of having been "laid off for lack of work under the collective bargaining agreement, with rights to recall and other attendant rights co-extensive with the provisions of that agreement applicable to persons laid off for lack of work." The collective bargaining agreement further provides that the company is vested with exclusive right to hire, assign, suspend, transfer, promote, or relieve employees from duty because of lack of work (Article III, Section 1), and that "[I]f any employee feels aggrieved by any action of the Company made pursuant to this Article, he shall have recourse to the grievance procedure . . . ." (Article III, Section 2). Article VIII contains the seniority provisions of the contract and Article XIV, Section 1, states the scope of the grievance and arbitration procedure to be all disputes "between the Company and the Union during the term of this Agreement which concern the meaning, interpretation or application of the provisions of this Agreement." Clearly, the resolution of this reinstatement of seniority workers' grievance is necessarily to be effectuated through arbitration procedures as set forth in the collective bargaining agreement within the clear meaning of the pertinent sections. It is not within the province of the court to weigh the merits of the grievance: "[T]he processing of even frivolous claims may have therapeutic values of which those who are not a part of the

plant environment may be quite unaware." *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 568, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960).

■ Alternatively, defendant contends that the alleged grievance occurred prior to the collective bargaining agreement and is therefore unrelated to its "meaning, interpretation or application," within the scope of arbitration. However, from the foregoing discussion it is clear that the rights of the permanently replaced strikers as employees laid off for lack of work are derived from the collective bargaining agreement itself as expressly provided in the settlement agreement.[5] The purported grievance concerning the failure to recall senior employees pursuant to Section 1 of Article VIII of the collective bargaining agreement is a dispute arising out of the contract. It is therefore arbitrable on its face.

■ The defendant's second contention in support of its motion to dismiss is that the plaintiff should be estopped from bringing this action by reason of the prior determination of the same issue by the National Labor Relations Board. For the same reason that the court will not consider whether or not the settlement agreement resolved finally the reinstatement issue, the court also will not decide whether or not this action constitutes a collateral attack of the Board's determination of plaintiff's unfair labor practice charge; it is not within the function of the court to consider the merits of the case or to undertake any consideration other than the arbitrability of the purported grievance.[6] We have already determined

5. The issue of the recall of the senior employees "laid off for lack of work" is rendered subject to the grievance procedures of the collective bargaining agreement by explicit provisions in the settlement agreement stating that such persons "shall be considered, effective November 21, 1974, as having been laid off for lack of work under the

collective bargaining agreement, with rights to recall and other attendant rights co-extensive with the provisions of that agreement applicable to persons laid off for lack of work."

6. See, *Office Employees Local 9 v. Allied Industrial Workers Union*, 397 F.Supp. 688

that the grievance is arbitrable on its face.

■ Defendant further contends that plaintiff's action should be dismissed because enforcement of arbitration of this matter might result in reinstatement of the replaced workers in contradiction to the holding in *Laidlaw Corp. v. N. L. R. B.*, 171 N.L.R.B. 1366 (1968), *enforcement granted*, 414 F.2d 99 (7th Cir. 1969), *cert. denied*, 397 U.S. 920, 90 S.Ct. 928, 25 L.Ed.2d 100 (1970), and in violation of Sections 8(a)(1) and (3) of the National Labor Relations Act concerning discrimination "in regard to hire or tenure of employment." Again, the court's inquiry is concluded once we determine that the grievance is an arbitrable issue within the grievance and arbitration provisions of the collective bargaining agreement, and we decline to consider the merits of this case.

■ The final reason offered by the defendant company in support of its motion to dismiss is that the plaintiff should be barred from obtaining the relief sought under traditional equitable considerations. Specifically, defendant contends that the plaintiff comes into court requesting equitable relief with "unclean hands" in that it seeks by arbitration what it was conclusively denied both in negotiations leading up to the settlement agreement and in resolution of the Union's unfair labor practice charge before the National Labor Relations Board. While the arbitrator may still find that the purported grievance was resolved at an earlier stage and is no longer meritorious, we conclude that the issue is a bona fide arbitrable dispute within the purview of Section 1 of Article XIV of the collective bargaining agreement and that the parties are properly before the court.

An appropriate order will be entered.

(1975). (The district court refused to consider whether a prior settlement agreement constituted a waiver of arbitration or was otherwise incorporated into the collective bargaining agreement and was a *pro tanto*

modification of plaintiff's right to insist on arbitration of the controversy, holding that such matters were for the arbitrator to decide.)