FAULTLESS DIVISION, a Division of Bliss & Laughlin Industries, Inc., Plaintiff-Appellee,

v.

LOCAL LODGE NO. 2040 OF DISTRICT 153 INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, Defendant-Appellant.

No. 74–1561.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 7, 1975.

Decided April 17, 1975.

Rehearing Denied May 2, 1975.

Sydney L. Berger, Evansville, Ind., for defendant-appellant.

Joseph A. Yocum, Thomas O. Magan, Evansville, Ind., for plaintiff-appellee.

Before PELL and TONE, Circuit Judges, and PERRY, Senior District Judge.[*]

PERRY, Senior District Judge.

This is an appeal from an order of the District Court denying a motion of Local Lodge 2040 of District 153, International Association of Machinists and Aerospace Workers (hereinafter "the union"), defendant below, to stay proceedings and to order plaintiff below, Faultless Division, a Division of Bliss & Laughlin Industries, Inc. (hereinafter "Faultless", or "the company"), to arbitrate. Faultless had brought a damage suit under Section 301 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185, alleging that the union had engaged in a work stoppage in violation of a no-strike clause contained in a collective bargaining agreement between the company and the union.

On August 26, 1972 Faultless and the union entered into a collective bargaining agreement which contained the following no-strike clause:

"Strikes, Stoppages, and Lockouts"

"136. The Company agrees that there shall be no lockouts, and the Union

---

[*] Senior District Judge Joseph Sam Perry of the Northern District of Illinois is sitting by designation.

agrees it will not cause or permit a strike or stoppage of work."

A work stoppage began at Faultless's caster plant at approximately mid-day on June 12, 1973 and ended at the beginning of the second shift on June 13, 1973. Approximately 489 of the company's 571 production and maintenance employees who were members of the union participated in the work stoppage.

As a result of the work stoppage, the company discharged three employees who were members but not officers of the union. A grievance over said discharge was then submitted to arbitration by the union pursuant to the collective bargaining agreement.

The arbitrator entered an award, ruling that the work stoppage was unauthorized and was a "wildcat" strike; that the three discharged employees had engaged in sufficient stalling activities during the "wildcat" strike to justify their being disciplined, but that their discharge was in violation of the agreement and was too severe a measure. The arbitrator then converted the discharge to a disciplinary layoff without pay and ordered reinstatement of the three employees without loss of seniority.

There is a basic dispute as to whether the work stoppage was caused or permitted by the union. The union contends on one hand, and the arbitrator found as aforesaid, that the work stoppage was an unauthorized, "wildcat" strike and that the union officials successfully tried to get the people back to work. The company, on the other hand, charges in its complaint that the union, through its officers, agents and members, engaged in, sanctioned, called and caused the work stoppage; further, the company states in its brief that the union has not disciplined any of its members who participated in the work stoppage, despite the fact that both the constitution and the by-laws of the union call for discipline in such instances.

The principal issue presented for review is: Does the collective bargaining agreement between the company and the union require that the controversy here involved—whether the work stoppage was a breach of the agreement by the union—be submitted to arbitration?

The collective bargaining agreement contains a grievance procedure which provides in pertinent part as follows:

### Grievance Procedure

45. In the event a dispute arises regarding the interpretation and/or application of any of the terms of this Agreement, such disputes shall be adjusted as promptly as possible according to the following procedure:

STEP 1. The complaint will be initially discussed verbally with the Foreman by the employee and/or the District Shop Steward. If the grievance is not so settled it shall be reduced to writing and presented to the Foreman. If it is not satisfactorily answered within two (2) working days, then

STEP 2. The Shop Chairman and/or the Union President or a member of the Grievance Committee, with or without the District Steward, shall present the grievance to the Plant Superintendent or his authorized substitute. If the grievance is not so presented within two (2) working days of the Foreman's decision, it shall be deemed settled or dropped. Any dispute regarding the interpretation and/or application of any of the terms of this Agreement which concerns the entire bargaining unit recognized by this Agreement may be initiated by the Shop Chairman or the Union President directly at Step 2. If the grievance is not settled at Step 2 within three (3) working days, then

STEP 3. The Grievance Committee with or without representatives of the local, district, or Grand Lodge, shall present the grievance to the representative or representatives of the Company. At this step the grievance shall be taken up at the next regularly scheduled weekly meeting or at a specially called meeting of the Union Grievance

Committee with the representative or representatives of the Company. If the grievance is not so presented, it shall be deemed settled or dropped. If the grievance is not settled at this step the Company will give its answer to the Union in writing within seven (7) working days, after the meeting.

STEP 4. The Company shall be notified in writing by the Union of its intention to arbitrate said grievance. If an appeal to arbitration is not taken within seven (7) working days after the decision of the Company, outlined in Step 3, then the grievance shall be deemed settled or dropped.

\* \* \* \* \* \*

48. In the event the Union submits a grievance to arbitration, an arbitrator shall be selected according to and shall be governed by the following procedure:

The representatives of the Union and the Company shall meet within ten (10) days after the Union has notified the Company of its intent to arbitrate. The representatives shall then try to, select an impartial arbitrator. If the parties should fail to mutually agree upon an arbitrator, they shall request the Federal Mediation and Conciliation Service to provide a panel of arbitrators from which they will select the arbitrator by each one alternately checking off a name and the arbitrator left shall be designated as Arbitrator. The decision of the Arbitrator shall be final and binding upon the parties.

49. The Arbitrator shall not have the right or power to add to, change, or modify any of the terms of this Agreement nor to change the wage rates set forth in Exhibits "A" or "B" hereto. The Arbitrator's fees and expenses shall be borne equally by the Company and the Union.

\* \* \* \* \* \*

52. All grievances not verbally settled in the first step are to be presented in writing to the Company or its representatives, and shall be signed by or list the name of the individual to whom the grievance pertains. All responses by the Company to written grievances shall also be in writing. The Union shall have the right to present a grievance involving three or more employees or on behalf of an absent employee.

## I.

The union contends that the controversy here in question, *viz.*, whether the work stoppage was a breach of the collective bargaining agreement by the union, is subject to arbitration because the controversy is (under paragraph 45 of the agreement) clearly a dispute "regarding the interpretation and/or application of any of the terms of this Agreement," and the agreement calls for a grievance procedure, including arbitration, for such disputes. The company, on the other hand, contends that it is neither obligated nor permitted by the agreement to submit its damage claim to arbitration because the grievance and arbitration procedure in the agreement is wholly employee-oriented and neither contemplates nor provides a procedure for the *company* to initiate a grievance or to submit a dispute to arbitration.

In furtherance of a congressional policy favoring private, extra-judicial resolution of labor-management disputes,[1] the Supreme Court of the United States issued this mandate in United Steelworkers of America v. Warrior and Gulf Nav. Co., 363 U.S. 574, 582–583, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960):

. . . An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

1. 29 U.S.C. § 171.

Later, however, the Court acknowledged that even in the presence of this clear congressional policy, it remains the rule that parties are bound to arbitrate only those disputes which, under a fair construction of their collective bargaining agreement, they have bound themselves to arbitrate. *See* Affiliated Food Distributors, Inc. v. Local Union No. 229, 483 F.2d 418, 419 (3rd Cir. 1973), cert. denied, 415 U.S. 916, 94 S.Ct. 1412, 39 L.Ed.2d 470 (1974). Thus, in Atkinson et al. v. Sinclair Refining Co., 370 U.S. 238, 241, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962), the Court stated:

> . . . Under our decisions, whether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties.
> . . . "[For] arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." . . .

The principle that doubt should be resolved in favor of arbitration does not relieve a court of the responsibility of applying traditional principles of contract interpretation, in an effort to ascertain the intention of the contracting parties. Affiliated Food Distributors, Inc. v. Local Union No. 229, *supra,* 483 F.2d at 420, and cases cited therein.

■ With the foregoing principles in mind, we have examined the agreement in order to ascertain the intention of the company and the union when they negotiated and signed the agreement, and to determine whether or not "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute". First, we note the following language contained in paragraph 45 of the agreement:

> STEP 1. The complaint will be initially discussed verbally with the Foreman by the employee and/or the District Shop Steward. . . .

> \* \* \* \* \* \*

> STEP 2. The Shop Chairman and/or the Union President or a member of the Grievance Committee, with or without the District Steward, shall present the grievance to the Plant Superintendent or his authorized substitute. . . .
> STEP 3. The Grievance Committee, with or without representatives of the local, district, or Grand Lodge, shall present the grievance to the representative or representatives of the Company. . . .

> \* \* \* \* \* \*

> STEP 4. The Company shall be notified in writing by the Union of its intention to arbitrate said grievance.

. . .

Next, the following language of paragraph 48 is noted:

> 48. In the event the Union submits a grievance to arbitration, an arbitrator shall be selected according to and shall be governed by, the following procedure: . . .

Of final significance is the language of paragraph 52:

> 52. All grievances not verbally settled in the first step are to be presented in writing to the Company or its representatives, and shall be signed by or list the name of the individual to whom the grievance pertains. All responses by the Company to written grievances shall also be in writing. The Union shall have the right to present a grievance involving three or more employees or on behalf of an absent employee.

We believe that a fair reading of the above-quoted language compels us to conclude that the grievance and arbitration procedure applies only to employee- or union-initiated grievances. We have not been cited to, nor have we been able to find, any language in the entire agreement which could reasonably call for a different conclusion. Thus we believe that it may be said with positive assurance that the grievance and arbitration procedure of this agreement is

not susceptible of an interpretation that covers the asserted dispute.

Several United States Courts of Appeals which have considered similar language in collective bargaining agreements have concluded that a company is not required to arbitrate its damage claim against the union for the latter's breach of a no-strike clause.

In Affiliated Food Distributors, Inc. v. Local Union No. 229, *supra,* the issue before the court was the same as is before us, *viz.,* whether an employer is bound to arbitrate its damage claim against the union for breach of a no-strike clause. There, as here, the employer brought a damage suit against the union under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. On the motion of the union, the District Court ordered a stay of proceedings pending arbitration. The employer appealed from the order, contending that its collective bargaining agreement with the union did not require arbitration of its damage claim. The court had before it the following language chosen by the employer and the union to evidence their agreement regarding arbitration:

*Article XXIII—Arbitration*

Any difference, grievance, or dispute between the Company and the Union arising out of, or relating to this Agreement, or its interpretation or application, or the enforcement thereof, except as otherwise specifically provided herein, shall be subject to the following procedure:

A. Any grievance which arises may be taken up by the Union Steward(s) with a representative of the department involved, or with an official of the Company. Grievances must be presented in writing.

B. In the event that the grievance should not have been resolved within three (3) working days, the Business Representative of the Union shall take the subject matter up with the Employer. If the Business Representative of the Union and the Employer cannot reach a satisfactory agreement within three (3) working days, the subject matter shall be referred to arbitration immediately. The arbitrator may be selected by mutual agreement between the Company and the Union. If no agreement is reached on the selection of the arbitrator within five (5) days, the arbitrator shall be selected from a panel of the American Arbitration Association.

It is to be clearly understood that the Arbitrator shall not have the power to alter any of the terms of the Agreement. Decisions of the Arbitration Board shall be final and binding on both parties. Pending the decision of the Arbitration Board, the Union will not permit any strikes or interferences with the regular routine of business. The cost of the arbitrator shall be borne equally by the parties to this Agreement.

Said the court, after holding that the agreement did not require arbitration of the damage claim:

. . . But, there is no occasion to resort to this congressional policy [favoring arbitration] in a case where the contract, fairly read as a whole, is not susceptible of a construction that the parties bound themselves to arbitrate the dispute before the court. We conclude that this is such a case.

483 F.2d at 420.

It is significant that there is a substantial similarity between the language of the first sentence of Article XXIII in *Affiliated* and the language upon which the union relies heavily in the case at bar, *viz.,* the language of the first sentence of paragraph 45.

To like effect is G. T. Schjeldahl Co., Packaging Machinery Div. v. Local Lodge 1680, Etc., 393 F.2d 502 (1st Cir. 1968), which involved an action under Section 301(a) of the Labor Management Relations Act against a union for damages caused by breach of a no-strike clause in a collective bargaining agreement. The District Court stayed the action pending arbitration. Considered by the court was the following language

taken from Article 8 (the "Grievance Procedure") of the agreement:

8.1 The term "grievance" means a difference or dispute between the Company and the Union, or between the Company and any employee with respect to the interpretation, meaning, application, claim or breach or violation of any of the provisions of this Agreement. ·

8.2 All grievances must be taken up within ten (10) working days of their occurrence or they shall not be deemed valid.

8.3 Any grievance as described above shall be settled in accordance with the following procedure:

FIRST: Employees in the first instance may register grievances with the Steward who shall present such grievances to the immediate supervisor. The immediate supervisor's answer shall be given as soon as possible but not to exceed one working day. Matters unsettled at this point shall be reduced to writing and given to the Manager of Industrial Relations of the Company.

\* \* \* \* \* \*

SECOND: [Reproduction of this and of step three, both of which provide for continuation of the employee-initiated grievance commenced under step one, was omitted.]

8.4 Within sixty (60) days of the date of the Company's answer of the Third Step, the Union will notify the Company in writing of its intention to (a) accept the Company's answer as final disposition, (b) withdraw the grievance, or (c) submit the grievance or grievances to arbitration.

8.5 Any grievance not settled in the grievance procedure may be submitted to arbitration by either party. \* \*

The court held that arbitration of the employer's damage claim was not required under the agreement.

The case for the company in the instant suit is stronger than *Schjeldahl* in that the agreement before us does not contain any language similar to the language of Art. 8.5 above, upon which the union had heavily relied in *Schjeldahl*.

Similarly, in Firestone Tire & Rubber Co. v. International Union of the United Rubber, Cork, Linoleum & Plastic Workers of America, AFL–CIO, et al., 476 F.2d 603 (5th Cir. 1973), the company brought suit against the union seeking injunctive relief and damages for violation of the no-strike provision contained in their collective bargaining agreement. As in the case at bar, the union filed a motion to stay court proceedings pending arbitration. After hearing argument on the motion, the District Court found that the collective bargaining agreement did not contemplate arbitration of no-strike clause breaches. The court thereupon denied the union's motion to stay proceedings. On appeal, the union contested the court's finding by contending that Art. XI, § 3(b) of the agreement evidenced an intent of the parties to arbitrate the question of union fault prior to the filing of a court suit for breach of the no-strike clause. Art. XI, § 3(b) provided as follows:

The Company agrees that in consideration of the carrying out of the responsibilities placed upon the International Union and the respective Local Unions and their officers, agents and members in Paragraph (a) of this Section that the Company will institute no action for monetary damages against the International Union or the respective Local Unions or their officers, agents or members for breach of said Paragraph (a).

The District Court had found that the grievance machinery contained in the agreement was wholly employee-oriented and particularly because of this fact, that a construction of the agreement as a whole compelled the conclusion that the issue was non-arbitrable. The Court of Appeals affirmed the lower court's decision. After first taking notice of the mandate issued by the United States Supreme Court in *Warrior, supra* (quoted by us above), the Court of Appeals gave the following rationale for its affirmance:

. . . The basis of arbitration is, however, contractual and unless the parties have provided for arbitration in the collective bargaining agreement, the court is powerless to compel arbitration. *Numerous cases have held that breaches of a no-strike clause are not subject to arbitration where (1) the grievance provisions of the agreement neither explicitly nor implicitly provide for such arbitration, and (2)* *the contractual grievance machinery is wholly employee oriented.* [citing *Atkinson* and *Schjeldahl, supra,* and Boeing Co. v. International Union, 370 F.2d 969 (3rd Cir. 1967).] The district court correctly applied this principle to the instant contract, and we affirm its finding that the company was not obligated to seek arbitration of the no-strike breach. [emphasis added]

Although the provisions of Art. XI, § 3(b), when viewed in isolation, might possibly raise an ambiguity as to arbitrability, when placed in the context of the whole contract, particularly the employee-oriented grievance procedures, there can be no question that the parties did not intend arbitration of no-strike breaches.

476 F.2d at 605–606.

In Boeing Co. v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW, AFL–CIO) and Local 1069, Etc., 370 F.2d 969 (3rd Cir. 1967), cited in *Firestone, supra,* the company had filed an action for damages under § 301 of the Labor Management Relations Act alleging that the defendant unions, their representatives and members, engaged in a strike and work stoppage in violation of a no-strike clause contained in a bargaining agreement signed by the parties. In their answer the defendants admitted that certain union members engaged in a strike and stoppage, but denied liability for alleged illegal activities. An appeal was taken from the District Court's denial of a motion to dismiss the complaint, for summary judgment, and, in the alternative, for a stay of the action pending arbitration. After ruling

that neither the District Court's denial of the motion for summary judgment nor its refusal to dismiss the complaint was appealable, the Court of Appeals addressed itself to the sole remaining question for decision, viz., whether the issues of the litigation were referable to arbitration. Citing the mandate of *Warrior, supra,* the court recognized at the outset that arbitration clauses such as those usually contained in labor-management contracts should be so construed as to effectuate congressional policy favoring the settlement of labor disputes. Nonetheless, said the court:

. . . Despite this liberal rule of construction [set out in *Warrior*] a reluctant party may not be compelled to submit a controversy to arbitration unless under a fair construction of the agreement he is bound to do so. [citations, including *Atkinson, supra,* omitted] Absent a contractual obligation to the contrary, a reluctant party is free to pursue any available legal remedy to redress its grievances. . . .

The contract before us provides for an elaborate procedure for the resolution of employees' grievances. . .

It is apparent from a reading of the contract that the grievance procedure is employee oriented. . . . The entire procedural structure is designed to resolve only the employees' grievances against the company. . . .

It is our opinion that we have before us a case in which "it may be said with positive assurance", as in *Atkinson, supra,* that the arbitration clause is not susceptible of a construction that the plaintiff was bound to arbitrate the issues involved in its action for damages.

The court then affirmed the judgment of the court below.

The union relies heavily upon Drake Bakeries, Inc. v. Local 50, American Bakery & Confectionery Workers International, AFL–CIO, et al., 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962). The reliance is misplaced, however, for *Drake* was predicated on the Court's construc-

**994**

tion of a collective bargaining agreement which prescribed a comprehensive grievance procedure available to employees and employer *alike*, and provided for compulsory arbitration, at the request of *either party,* of "all complaints, disputes or grievances arising between them [the parties] involving questions of interpretation or application of any clause or matter covered by this contract or any act or conduct or relation between the parties hereto, directly or indirectly." The agreement before us differs greatly; in its significant aspects it is quite comparable, as we noted earlier, to the agreement in *Affiliated, supra.*

## II.

The union further contends that because some of the identical issues involved in this work stoppage have already been submitted to and decided by an arbitrator, and because other identical issues arising out of the same dispute are pending in additional arbitration proceedings under the same agreement between the same parties, it is especially appropriate that arbitration of the remaining issues arising out of the same work stoppage be ordered; otherwise, argues the union, there will be piecemeal resolution of several issues arising out of the same dispute, a result which would violate the federal policy favoring arbitration of labor disputes, create a new and serious problem of conflicting resolution of identical factual issues, and increase the danger of industrial strife. The force of this argument escapes us. The issues before the court are not the same issues before the arbitrator. The arbitrator decided only issues raised by *employees* concerning actions taken against them by the company. We must reject this contention.

For all of the foregoing reasons, we hold that the collective bargaining agreement between the company and the union does not require that the controversy here involved be submitted to arbitration. Accordingly, the interlocutory order of the District Court denying the union's motion to stay proceedings and to order the company to arbitrate, is Affirmed.