**EBERLE TANNING COMPANY, Appellant,**

v.

**SECTION 63L, FLM JOINT BOARD, ALLEGHENY DIVISION, UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION and Joint Council No. 3, FLM Joint Board, 101 Campbell Street, Elkland, PA 16920.**

**No. 81–2899.**

United States Court of Appeals, Third Circuit.

Argued June 16, 1982.

Decided June 28, 1982.

---

James A. Matthews, Jr. (argued), Kenneth D. Kleinman, Morgan, Lewis & Bockius, Philadelphia, Pa., for appellant Eberle Tanning Co.

Ralph Shapiro (argued), Cammer & Shapiro, P. C., New York City, for appellee Section 63L, FLM Joint Bd., etc.

Before ALDISERT, GIBBONS and HIGGINBOTHAM, Circuit Judges.

### OPINION OF THE COURT

GIBBONS, Circuit Judge.

 Eberle Tanning Company (the Company), a Pennsylvania corporation engaged in the business of tanning and distribution of leather, appeals from an order of the District Court dismissing its complaint without prejudice. The defendants, Section 63L, FLM Joint Board, Allegheny Division, United Food and Commercial Workers International Union and Joint Council No. 3, FLM Joint Board (the Union), are the collective bargaining agents for the non-supervisory production and maintenance employees in the Company's Westfield, Pennsylvania plant. The Company's complaint was brought pursuant to section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, for compensatory and punitive damages resulting from an alleged breach of a collective bargaining agreement between the Company and the Union. The

complaint alleged that the Union violated the no-strike clause of the agreement by engaging in a seven day cessation of work beginning on April 7, 1981. The District Court held that the dispute was subject to arbitration under the agreement, and dismissed the complaint without prejudice. We affirm, and hold that the District Court properly dismissed the complaint without prejudice because the dispute was arbitrable.

## I.

The Union has been the exclusive collective bargaining agent for the Company's production and maintenance workers for many years. The most recent collective bargaining agreement, in effect from August 25, 1979 to January 20, 1983, contains a standard no-strike clause (Section 9)[1] and a grievance and arbitration procedure. Section 13A defines a grievance as "any complaint of an alleged violation of this agreement or any dispute concerning the meaning and application of any provision of the agreement." App. 39. Section 13B of the contract provides that the parties shall proceed in resolving grievances in the following manner:

Step 1. An employee having a grievance shall report such grievance to his departmental steward who may thereafter discuss the matter with the employee's foreman. If the grievance is submitted to the foreman by the departmental steward and it is not settled within three (3) workdays and further discussion is desired, the grievance will be reduced to writing on the form provided for this purpose and delivered to the employee's foreman.

Step 2. The grievance will then be taken up by the departmental steward with the Plant Superintendent. If there is no settlement within three (3) workdays after the Plant Superintendent receives the written grievance, and further discussion is desired,

Step 3. The Shop Committee and representatives of the COMPANY will discuss the matter and attempt to settle the grievance. If it is not settled within seven (7) calendar days after the conclusion of the discussion referred to in Step 2 above,

Step 4. settlement shall then be attempted between the representatives of the International Union and the executives of the COMPANY.

*Id.* Section 13C provides that representatives of the Company and the Union shall meet monthly to discuss unsettled grievances. Finally, Section 13D provides for final and binding arbitration of unresolved disputes:

D. Arbitration. Should the grievance remain unsettled, either party may refer it to a three (3) man Board of Arbitration.

\* \* \* \* \* \*

The party requesting arbitration must notify the other party in writing by registered mail within ten (10) days after the conclusion of the discussions referred to in Step 4 in "B" of this section, of its desire to arbitrate . . .

\* \* \* \* \* \*

An award of the majority of the members of the Board shall be final and binding. Payment of the Chairman's charge for his services and expenses will be shared equally by the COMPANY and the UNION.

\* \* \* \* \* \*

No employee shall have the right to require arbitration, this right being reserved to the UNION and COMPANY exclusively.

App. 39–40.

On April 3, 1981, after regular working hours, an altercation occurred in a local bar between a member of the collective bar-

---

1. Section 9 provides:

A. No Strikes. During the term of this agreement there shall be no strikes or work stoppages, whether direct or sympathetic. No officer or representative of the UNION shall authorize, approve, ratify or condone any strike or work stoppage, and no employee shall participate in any such activities. App. 37.

gaining unit and his supervisor. The employee struck the supervisor, and was suspended and discharged as a result. In expedited proceedings, an arbitrator upheld the discharge as reasonable under the circumstances. In spite of the arbitrator's decision, on April 7, 1981 approximately 150 of the Company's employees engaged in a work stoppage which lasted for seven days.[2] The Company did not initiate arbitration, but instead on April 20, 1981 filed a complaint under § 301[3] in the District Court, seeking compensatory and punitive damages against the Union. On July 13, 1981, the Union filed a motion to stay the action on the ground that the collective bargaining agreement required the Company to arbitrate the dispute. The Company opposed the motion to stay, arguing that the grievance procedure provided a forum for employee grievances only. On September 25, 1981, the District Court denied the motion to stay, but dismissed the action without prejudice and directed the parties to submit the dispute to arbitration.[4] The Company brought this appeal from the District Court's order. The sole issue presented is whether the District Court erred in deciding that the Company was contractually bound to submit its claim for breach of the no-strike clause to arbitration.

## II.

Federal labor law imposes no inherent duty to arbitrate on the parties to a collective bargaining agreement. Instead, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). Thus, the issue of arbitrability is "a matter to be determined by the courts on the basis of the contract entered into by the parties." *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462 (1962). *See also, Drake Bakeries, Inc. v. Local 50, American Bakery & Confectionery Workers,* 370 U.S. 254, 256, 82 S.Ct. 1346, 1348, 8 L.Ed.2d 474 (1962). Although arbitration is a matter of contract, a federal court interpreting a collective bargaining agreement must be mindful of the federal labor policy encouraging arbitration of labor disputes. Indeed, the Supreme Court has established a "strong presumption" favoring arbitrability. *Nolde Brothers, Inc. v. Local 357, Bakery and Confectionery Workers,* 430 U.S. 243, 254, 97 S.Ct. 1067, 1073, 51 L.Ed.2d 300 (1977). In *Warrior & Gulf Navigation Co., supra,* the Court stressed that arbitration clauses should be given generous application:

[T]o be consistent with congressional policy in favor of settlement of disputes by the parties through the machinery of ar-

2. Pursuant to Section 9C of the collective bargaining agreement, in spite of any work stoppage the Union was obliged to make a good faith effort to furnish sufficient employees to protect perishable stock in process. On April 8, 1981 the Company telegrammed the Union's business agent notifying him of the Union's responsibility to protect perishable stock during the strike. Between April 10 and the end of the strike on April 13, the employees returned to work, but refused to perform any duties except in connection with protection of perishable stock.

3. Section 301 of the Labor-Management Relations Act of 1947 provides in pertinent part:
   Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
   29 U.S.C. § 185(a) (1976).

4. The District Court decided to dismiss without prejudice, rather than to stay the action pending arbitration, because: (1) the determination whether the Union violated the collective bargaining agreement was central to the dispute; (2) an arbitral decision in favor of the Union might obviate the need for judicial consideration of the dispute; (3) the scope of judicial review over decisions of labor arbitrators is narrow, and the court would not be making a *de novo* determination as to whether the Union's work stoppage was legal; and (4) no prejudice to either party would result from dismissal without prejudice rather than a stay.

bitration ... [a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

*Id.* 363 U.S. at 582–83, 80 S.Ct. at 1353. *See also, e.g., Gateway Coal Co. v. UMW,* 414 U.S. 368, 377–79, 94 S.Ct. 629, 636–637, 38 L.Ed.2d 583 (1974); *Westinghouse Broadcasting Co. v. Local 804, Theatrical Stage Employees,* 616 F.2d 97, 100–01 (3d Cir. 1980); *Controlled Sanitation Corp. v. District 128, International Association of Machinists,* 524 F.2d 1324 (3d Cir. 1975), *cert. denied,* 424 U.S. 915, 96 S.Ct. 1114, 47 L.Ed.2d 319 (1976). The issue of the availability of arbitration for this alleged breach of the no-strike clause therefore turns on a construction of the collective bargaining agreement in effect between the Company and the Union. Each case must be judged on its own merits, *Controlled Sanitation Corp., supra,* 524 F.2d at 1329 n.7, in light of the strong federal policy preferring arbitration of labor disputes.

On appeal, as in the District Court, the Company argues that the contractual grievance and arbitration machinery contemplates resolution only of employee-initiated disputes. Because the Company here seeks redress for the Union's alleged violation of the no-strike clause, the Company urges that the contract does not commit settlement of the dispute to the grievance-arbitration machinery. We disagree because we find that the collective bargaining agreement is ambiguous and we cannot say with "positive assurance" that the parties intended to foreclose arbitration where the Company is the aggrieved party. We therefore hold that the dispute must be submitted to arbitration rather than brought to federal court.

The controversy in question clearly falls within the definition of a grievance contained in Section 13A of the contract, since it is a "complaint of an alleged violation" of a provision of the agreement. This inclusive definition is stated broadly enough to describe all disputes, whether Company or Union initiated. The Company argues that all four steps of the initial grievance machinery contemplate an aggrieved employee attempting to resolve a dispute. The employee can report his grievance to his shop steward, who will in turn discuss the matter with the foreman and the Plant Superintendent. If no resolution is reached, the dispute can be referred to the Shop Committee and subsequently the International Union for further negotiation with representatives of the Company. If the grievance machinery ended here, we would be constrained to follow the principle that the general contractual provision defining grievances is limited by the subsequent, more specific provision outlining the procedures which must be followed in settling disputes. *See, Friedrich v. Local 780, IUE,* 515 F.2d 225 (5th Cir. 1975); *Affiliated Food Distributors, Inc. v. Local 229, International Brotherhood of Teamsters,* 483 F.2d 418, 420 (3d Cir. 1973), *cert. denied,* 415 U.S. 916, 94 S.Ct. 1412, 39 L.Ed.2d 470 (1974); *G. T. Schjeldahl Co. v. Local 1680, International Association of Machinists,* 393 F.2d 502, 504 (1st Cir. 1968). The fact that the first four in-house steps of the grievance machinery are employee-oriented does not, however, necessarily foreclose recognition of the Company's duty to arbitrate its "complaint of an alleged violation" of the contract. Section 13C, establishing monthly meetings and Section 13D, providing that either party may initiate arbitration of an unsettled dispute, create an ambiguity concerning the Company's duty to arbitrate its grievances, an ambiguity which we must resolve consistent with federal labor policy.

In *Wilkes-Barre Publishing Co. v. Newspaper Guild of Wilkes-Barre,* 504 F.Supp. 54 (M.D.Pa.1980), the District Court construed a contract containing an employee-oriented grievance procedure, but also providing that "any matter arising from the application of [the] agreement" which could not be settled by the grievance committee would be referred to a Standing Committee and then, on either party's initiative, to arbitration. *Id.* at 72. The District Court found that the broad language describing the matters encompassed by the arbitration clause

evidences an intent that all contractual disputes between the plaintiff and Guild Local, whether employer or employee-oriented, be subject to arbitration. Furthermore, the fact that the section permits either party to submit an issue to final and binding arbitration is a strong indication that the [employer] may be the grieving party, even though the initial procedures ... are not suitable for handling the matter.

*Id.* A fair reading of the contract, the District Court found, indicated that employer-oriented grievances began with arbitration. *Id.* at 73. This court affirmed.

The [district] court concluded that the arbitration clause is ambiguous, that the parties contracted for an arbitral determination of its meaning, and that this is what they should receive. We agree. The parties agreed that the arbitrator was to decide "any matter arising from the application of this Agreement...." In these circumstances the language may well be broad enough to encompass arbitrability of the dispute....

*Wilkes-Barre Publishing Co. v. Newspaper Guild of Wilkes-Barre,* 647 F.2d 372, 373, 382–83 (3d Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 1003, 71 L.Ed.2d 295 (1982).

The definition of a grievance in this case is similarly broad, requiring that all differences between the Company and the Union be arbitrated as long as they involve an alleged violation of the agreement or any dispute concerning the meaning or application of the agreement. The contract contains neither a provision excluding any topic from arbitration, nor limiting the power of an arbitrator to make an award. *See, Yale & Towne Manufacturing Co. v. Local 1717, International Ass'n of Machinists,* 299 F.2d 882, 884 (3d Cir. 1962); *Controlled Sanitation Corp. v. District 128, International Ass'n of Machinists, supra,* 524 F.2d at 1328.[5] A fair reading of the contract as a whole indicates that the grievance arbitration machinery is not wholly employee oriented.[6] The Company can initiate griev-

---

**5.** The Company argues that *Affiliated Food Distributors, Inc. v. Local Union No. 229,* 483 F.2d 418 (3d Cir. 1973), *cert. denied,* 415 U.S. 916, 94 S.Ct. 1412, 39 L.Ed.2d 470 (1974), controls this appeal. The collective bargaining agreement at issue in that case provided:

> Article XXIII—Arbitration
>
> Any difference, grievance or dispute between the Company and the Union arising out of, or relating to this Agreement, or its interpretation or application, or the enforcement thereof, except as otherwise specifically provided herein shall be subject to the following procedure:
>
> A. Any grievance which arises may be taken up by the Union Steward(s) with a representative of the department involved, or with an official of the Company. Grievances must be presented in writing.
>
> B. In the event that the grievance should not have been resolved within three (3) working days, the Business Representative of the Union shall take the subject matter up with the Employer. If the Business Representative of the Union and the Employer cannot reach a satisfactory agreement within three (3) working days, the subject matter shall be referred to arbitration immediately.

*Id.* at 419. Examining this contractual language, the Court of Appeals concluded that these paragraphs specified three successive, mandatory steps in the process of arbitrating a grievance. Since it would be a "strained construction at best which would attribute to the parties the thought that a company-official would refer an employer's grievance to a union steward who would, in turn, refer the grievance to 'a representative of the department involved' or to 'an official of the company,'" the court concluded that the grievance procedure embraced only employee complaints. *Id.* at 421.

We do not view *Affiliated Foods* as dispositive of this case. *Affiliated Foods* falls within the category of cases where arbitration was available only after the parties had exhausted, as a condition precedent to arbitration, an employee-oriented grievance machinery. *See also, Friedrich v. Local No. 780,* 515 F.2d 225, 229 (5th Cir. 1975); *Boeing Co. v. Local 1069, UAW,* 370 F.2d 969 (3d Cir. 1967). Similarly, we are not persuaded by *Faultless Division v. Local 2040, International Association of Machinists,* 513 F.2d 987 (7th Cir. 1975). Under the bargaining agreement at issue in that case, unlike here, only the Union could initiate arbitration. *Id.* at 990. Thus the grievance-arbitration procedure was "wholly employee oriented" and the court was compelled to conclude that only employee grievances were subject to arbitration.

**6.** Other provisions of the collective bargaining agreement support this conclusion. For example, Section 5A provides that if a dispute arises over the Company's efforts to improve and maintain productive efficiency, the matter may be submitted to arbitration at once by either

ances either pursuant to Section 13C, at a monthly meeting, or under 13D, with arbitration. Because we lack the positive assurance necessary to conclude that the Company did not bind itself to arbitrate its claim that the Union breached the no-strike clause, we affirm the decision of the District Court.

### III.

The judgment appealed from will be affirmed.

party. App. 25. Another contractual clause, Section 13G, states that if the Company discharges an employee because of incompetency, it must immediately notify the union and provide an opportunity for protest of the discharge, prior to arbitration. App. 41. These two contractual provisions clearly contemplate settlement of complaints initiated by the Company by use of the internal grievance-arbitration machinery. The contract as a whole thus evinces an intention that both parties, not just the union, would utilize informal dispute resolution procedures to resolve their differences. These provisions distinguish this case from *G.T. Schjeldahl Co. v. Local 1680, IAM*, 393 F.2d 502 (1st Cir. 1968), where the grievance procedure was oriented toward employee complaints only.