[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-10486

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 6, 2011
JOHN LEY
CLERK

D.C. Docket No. 7:08-cv-02033-LSC

JIM WALTER RESOURCES, INC.,

                                        Plaintiff-Appellant,

                versus

UNITED MINE WORKERS OF AMERICA, INTERNATIONAL
UNION, UNITED MINE WORKERS OF AMERICA, LOCAL 2397,
UNITED MINE WORKERS OF AMERICA, LOCAL 2245,
UNITED MINE WORKERS OF AMERICA, LOCAL 2368,
UNITED MINE WORKERS OF AMERICA, LOCAL 2427,

                                        Defendants-Appellees.


_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(December 6, 2011)

Before EDMONDSON and MARTIN, Circuit Judges, and HODGES,* District
Judge.

_____

        *Honorable Wm. Terrell Hodges, U. S. District Judge for the Middle District of Florida,
sitting by designation

Hodges, District Judge

This appeal presents an issue concerning the interpretation and application of a collective bargaining agreement between Jim Walter Resources, Inc. ("Jim Walter"), and the United Mine Workers of America (the "Union").

Jim Walter sued the Union in the district court for damages caused by a work stoppage conducted by the Union in alleged violation of the collective bargaining agreement.[1] The district court entered summary judgment without reaching the merits holding that the dispute was subject to arbitration under the contract. Jim Walter appealed. We reverse and remand for further proceedings in the district court.[2]

# I

The facts as found by the district court for purposes of deciding the motion for summary judgment are these.

Jim Walter owns and operates coal mining properties and supporting facilities in Tuscaloosa County, Alabama. The United Mine Workers, and its four local unions involved in this case, represent Jim Walter's mining employees for

---

[1] The action was brought under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. There is no issue concerning the jurisdiction of the district court to entertain the case.

[2] "This Court reviews *de novo* summary judgment rulings and draws all inferences and reviews all evidence in the light most favorable to the non-moving party." Moton v. Cowart 631 F.3d 1337, 1341 (11th Cir. 2011) (citing Capone v. Aetna Life Ins. Co., 592 F.3d 1189, 1194 (11th Cir. 2010)). See also WSB-TV v. Lee, 842 F.2d 1266, 1270 (11th Cir. 1988).

purposes of collective bargaining concerning the miner's terms and conditions of employment. The current labor agreement between the parties became effective on January 1, 2007, and does not expire until December 31, 2011. One of the provisions of that agreement states: "The International Union, United Mine Workers of America, may designate memorial periods not exceeding a total of ten (10) days during the term of this Agreement at any mine or operation provided it shall give reasonable notice to the Employer." In addition to the primary collective bargaining agreement, the parties also entered into a separate Memorandum of Understanding. One of its provisions deals with memorial periods and states, among other things, that: "The memorial period will be designated for legitimate reasons."[3]

On October 14, 2008, Local 2379 and its members observed a memorial period away from work at Jim Walter's No. 7 Mine; and on October 28, 2008, all four of the defendant Local Unions took a memorial period absence from work at each of their respective Jim Walter mines. Jim Walter claims that these work stoppages were not "legitimate" memorial periods as required by the memorandum of understanding. The Union counters that the memorial periods were properly designated in order to allow its members to attend local hearings being conducted

---

[3] The record does not contain any additional contract documentation providing a definition of the terms "memorial period" or "legitimate reasons," but that involves the merits of the underlying dispute which the district court did not reach. Neither do we.

3

by the Department of Labor, Mine Safety and Health Administration. Jim Walter

responds that the proffered justification is pretextual – that the real motivation for

the work stoppages was a work place dispute at Mine No. 7 concerning work

scheduling and other conflicts with the company's Industrial Relations

Supervisor.[4]

## II

The district court granted a motion for summary judgment filed by the

Union seeking, in effect, to compel arbitration of Jim Walter's claim for damages.

The governing provisions of the collective bargaining agreement are these:

> Article XXVII - MAINTAIN INTEGRITY OF
> CONTRACT AND RESORT TO COURTS
>
> The United Mine Workers of America and the
> Employers agree and affirm that, except as provided
> herein, they will maintain the integrity of this contract
> and that all disputes and claims which are not settled by
> agreement shall be settled by the machinery provided in
> the "Settlement of Disputes" Article of this Agreement
> unless national in character in which event the parties
> shall settle such disputes by free collective bargaining as
> heretofore practiced in the industry, it being the purpose
> of this provision to provide for the settlement of all such

---

[4] Jim Walter's complaint in the district court prayed for (1) "a declaratory judgment that defendants are subject to the Labor Agreement and that the dispute between the parties is subject to the [contractual] arbitration procedure"; and (2) an award of damages "for these illegal work stoppages." It is an irony of the case that Jim Walter depends upon the arbitration provisions of the contract from which to infer a no strike obligation on the part of the Union (i.e., that the employees at Mine No. 7 should have grieved and sought arbitration of their disputes) while contending that the Company has no reciprocal contractual obligation to arbitrate its claim for damages.

disputes and claims through the machinery in this contract and by collective bargaining without recourse to the courts.

The Employer, however, expressly authorizes the Union to seek judicial relief, without exhausting the grievance machinery, in cases involving successorship. (Emphasis supplied).

* * * *

Article XXIII - - SETTLEMENT OF DISPUTES

Section (a) Mine Committee
[creates a committee of employees to participate in step two of the Grievance Procedure below]

Section (b) District Arbitrators
[creates a panel of arbitrators to participate in step four of the Grievance Procedure below]

Section (c) Grievance Procedure

Should Differences arise between the Mine Workers and an Employer as to the meaning and application of the provisions of this Agreement, or should differences arise about matters not specifically mentioned in this Agreement, or should any local trouble of any kind arise at the mine, an earnest effort shall be made to settle such differences at the earliest practicable time.

Disputes arising under this Agreement shall be resolved as follows:

(1)  The Employee will make his complaint to his immediate foreman who shall have the authority to settle the matter.  The foreman will notify the Employee

5

of his decision within 24 hours following the day when the complaint is made. . . .

(2) If no agreement is reached between the Employee and his foreman the complaint shall be submitted to the BCOA-UMWA Standard Grievance Form and shall be taken up within five working days of the foreman's decision by the Mine Committee and mine management. . . . [I]f the complaint is not settled, the grievance shall be referred to a representative of the UMWA district, designated by the Union, and a representative of the Employer.

(3) Within seven working days of the time the grievance is referred to them, the district representative and the representative of the Employer shall meet and review the facts and pertinent contract provisions in an effort to reach agreement. . . .

(4) In cases where the district representative and the representative of the Employer fail to reach agreement, the matter shall, within 10 calendar days after referral to them, be referred to the appropriate district arbitrator who shall decide the case without delay. . . .

## III

The Union argues, as the district court determined, that Jim Walter's claim for damages is subject to arbitration because Article XXVII of the collective bargaining agreement declares a dominant, mutual intention to resolve "all disputes and claims . . . without recourse to the courts." Nothing in Article XXVII mentions arbitration.

Jim Walter concedes that contractual commitment – as it must – but asserts that the phrase "all disputes and claims" is expressly limited to those disputes that

6

can "be settled by the machinery provided in the 'Settlement of Disputes' Article" of the agreement, and that Article XXIII governing Settlement of Disputes is exclusively employee oriented. The contract does not contemplate or provide for any claim or grievance, or the arbitration of any claim or grievance, asserted by the employer.

Other provisions in the contract discuss arbitration, but all of these other provisions contemplate disputes originating from employee complaints; all of these other provisions refer to the employee oriented grievance procedures in Article XXIII(c). Article XXIII(b) (when selecting arbitrators, arbitration will proceed through procedures outlined in Article XXIII(c)); Article XXII(s)(3) (disputes about employer's application of employee bonus plans, if arbitrated, must go through procedures in Article XXIII(c)); Article XXIV(d) (if the union believes there was no just cause for discharge, it can bypass the grievance procedure in Article XXIII(c) and arbitrate immediately).

The issue presented is not a novel one. It has received attention from the Supreme Court and several of the Circuits including, as will be seen, this Circuit as well.

**IV**

7

Analysis of the relevant Supreme Court decisions must begin with the Steelworkers Trilogy, decided in 1960. United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343 (1960); United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 80 S. Ct. 1347 (1960); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S. Ct. 1358 (1960). The Trilogy established several basic axioms governing the application of provisions for arbitration contained in collective bargaining agreements. These principles were later synthesized and reiterated by the Court in AT&T Tech., Inc. v. Communications Workers of America, 475 U.S. 643, 648-650, 106 S.Ct. 1415, 1418-1419 (1986):

> The first principle gleaned from the Trilogy is that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Warrior & Gulf, supra, 363 U.S., at 582, 80 S. Ct., at 1353; American Mfg. Co., supra, 363 U.S., at 570-571, 80 S. Ct., at 1364-1365. . . .

> \* \* \* \*

> The second rule, which follows inexorably from the first, is that the question of arbitrability–whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance–is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator. Warrior & Gulf, supra, 363 U.S., at 582-583, 80 S. Ct., at 1352-1353.

> \* \* \* \*

8

The third principle derived from our prior cases is that, in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims. Whether "arguable" or not, indeed even if it appears to the court to be frivolous, the union's claim that the employer has violated the collective-bargaining agreement is to be decided, not by the court asked to order arbitration, but as the parties have agreed, by the arbitrator.

\* \* \* \*

Finally, it has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." Warrior & Gulf, 363 U.S., at 582-583, 80 S. Ct., at 1352-1353.

In 1962, two years after the Trilogy, the Supreme Court decided two additional cases on the same day. Atkinson v. Sinclair Ref. Co., 370 U.S. 238, 82 S. Ct. 1318 (1962), and Drake Bakeries, Inc. v. Local 50, American Bakery & Confectionery Workers Int'l, 370 U.S. 254, 82 S.Ct. 1346 (1962). In both cases an employer had sued the union representing its employees asserting a claim for damages, as in this case, for an alleged violation of the no strike clause in their respective collective bargaining agreements. The contracts in both cases contained provisions for arbitration of unresolved disputes. In Drake Bakeries the

9

Court held that the employer's claim for damages was arbitrable, while in

Atkinson the Court held that it was not.  Both opinions (by Justice White) focused

upon the different terms of the two contracts.  Specifically, the contract in

Atkinson contained a multiple step grievance procedure, very much like the one in

this case, that was keyed exclusively to the processing of employee grievances.

See 370 U.S. at 249, 82 S.Ct. at 1325-27, Appendix.  There was no mention of the

submission of grievances by the company.  Arbitration of the employer's claim

was not required.  By contrast, in Drake Bakeries, the contractual grievance

procedure expressly contemplated both union and employer initiated grievances

culminating in arbitration.[5]  The employer's claim was held to be arbitrable.

---

[5]     See Drake Bakeries, 370 U. S. at 257, n. 2, 82 S. Ct. at 1348 n. 2:

> Article V-Grievance Procedure (a) The parties agree that they will
> promptly attempt to adjust all complaints, disputes or grievances
> arising between them involving questions of interpretation or
> application of any clause or matter covered by this contract or any
> act or conduct or relation between the parties hereto, directly or
> indirectly.  In the adjustment of such matters the Union shall be
> represented in the first instance by the duly designated committee
> and the Shop Chairman and the Employer shall be represented by
> the Shop Management.  It is agreed that in the handling of
> grievances there shall be no interference with the conduct of the
> business.  (b) If the Committee and the Shop Management are
> unable to effect an adjustment, then the issue involved shall be
> submitted in writing by the party claiming to be aggrieved to the
> other party.  The matter shall then be taken up for adjustment
> between the Union and the Plant Manager or other representative
> designated by management for the purpose.  If no mutually
> satisfactory adjustment is reached by this means, or in any event
> within seven (7) days after the submission of the issue in writing as
> provided above, then either party shall have the right to refer the
> matter to arbitration as herein provided.

The former Fifth Circuit twice considered the very issue presented here. Firestone Tire & Rubber Co. v. International Union of United Rubber, Cork, Linoleum & Plastic Workers of America, 476 F.2d 603 (5th Cir. 1973), and Friedrich v. Local Union No. 780, IUE-AFL-CIO-CLC, 515 F.2d 225 (5th Cir. 1975).[6] In both cases the Court held, citing Atkinson among other authorities,[7] that the employer was not bound to arbitrate a claim for damages flowing from an alleged breach of a no strike clause where "the contractual grievance machinery is wholly employee oriented." Firestone Tire & Rubber Co., 476 F.2d at 605; Friedrich, 515 F.2d at 227, 230.

In addition to the former Fifth Circuit decisions in Friedrich and Firestone Tire and Rubber Company, the courts of appeals in the First, Third, Seventh and Ninth Circuits have reached the same result when interpreting collective bargaining agreements containing employee oriented grievance and arbitration clauses. See G. T. Schjeldahl Co. (1st Cir.) and Boeing Company (3rd Cir.), supra n.7; Latas Libby's Inc. v. United Steelworkers of America, 609 F.2d 25 (1st Cir. 1979); Lehigh Portland Cement Co. v. Cement, Lime, Gypsum, & Allied Workers

---

[6] The Eleventh Circuit has adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to September 30, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[7] Both opinions cited with approval the First Circuit decision in G. T. Schjeldahl Co. v. Local Lodge 1680, Int'l Ass'n of Machinists, 393 F.2d 502 (1st Cir. 1968), and the Third Circuit decision in Boeing Company v. International Union, United Automobile, Aerospace & Agricultural Implement Workers of America, 370 F.2d 969 (3rd Cir. 1967).

11

Div., 849 F.2d 820 (3rd Cir. 1988); Faultless Div. v. Local Lodge No. 2040 of District 153 Int'l Ass'n of Machinists & Aerospace Workers, 513 F.2d 987 (7th Cir. 1975); Standard Concrete Prods., Inc. v. General Truck Drivers, Office, Food & Warehouse Union, 353 F.3d 668 (9th Cir. 2003).

Other decisions in the Second, Third and Fourth Circuits are, arguably, to the contrary. ITT World Communications, Inc. v. Communications Workers of America, 422 F.2d 77 (2d Cir. 1970); Eberle Tanning Co. v. Section 63L, FLM Joint Board, Allegheny Div., United Food & Commercial Workers, 682 F.2d 430 (3rd Cir. 1982); Domino Sugar Corp. v. Sugar Workers Local Union 392, 10 F.3d 1064 (4th Cir. 1993); H K. Porter Co., Inc. v. Local 37, United Steelworkers of America, 400 F.2d 691 (4th Cir. 1968). In those cases, the courts tended to apply a presumption of arbitrability where, as in this case, there was a generally expressed contractual commitment to arbitrate disputes, and the opinions placed no weight upon the limiting effect of employee oriented grievance mechanisms. Rather, those cases say, if the parties had intended to exclude employer initiated claims from arbitration, they could and should have said so.

Thus, in finding Jim Walter's claim to be arbitrable in this instance, the district court relied upon the reasoning of the Second Circuit decision in ITT World Communications, a case involving very similar contractual provisions.[8]

---

[8] The district court cited, but did not undertake to distinguish, the former Fifth

12

There the Second Circuit emphasized the principle derived from <u>Warrior & Gulf</u> that an order to arbitrate a labor contract dispute "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage."  422 F.2d at 81 (quoting <u>Warrior & Gulf</u>, 363 U.S. at 582-583, 80 S. Ct. at 1353).  The Second Circuit then said:

> We certainly cannot say 'with positive assurance' that Article VI 'is not susceptible of an interpretation that covers' employer, as well as employee, claims of contract violation.  In addition to what we have already noted, we point out that the parties elsewhere in the contract showed that they knew how to clearly exclude a subject from arbitration when they so desired.  Had the parties wanted to do the same with claims of violation of the 'no-strike' clause, they could easily have been equally specific.  The importance of clear exclusionary language to negate a presumption of arbitrability of a dispute about a no-strike clause was emphasized by the Supreme Court in <u>Drake Bakeries</u> <u>supra</u>, 370 U.S. at 258-259, 82 S. Ct at 1349 (1962). . . .

422 F.2d at 81-82.

The Second Circuit approach, however, following the same rationale of the compatible decisions in the Third and Fourth Circuits previously cited, has recently been the subject of critical comment by the Supreme Court in <u>Granite</u>

Circuit decision in <u>Friedrich</u>.

13

Rock Company v. International Brotherhood of Teamsters, ____ U.S. ____, 130

S. Ct. 2847, 2859, n. 8 (2010):[9]

> Although Warrior & Gulf contains language that might
> in isolation be misconstrued as establishing a
> presumption that labor disputes are arbitrable whenever
> they are not expressly excluded from an arbitration
> clause, 363 U.S., at 578-582, 80 S. Ct. 1347, the opinion
> elsewhere emphasizes that even in LMRA cases,
> "courts" must construe arbitration clauses because "a
> party cannot be required to submit to arbitration any
> dispute which he has not agreed so to submit." Id., at
> 582, 80 S. Ct. 1347 (applying this rule and finding the
> dispute at issue arbitrable only after determining that the
> parties' arbitration clause could be construed under
> standard principles of contract interpretation to cover it).

We are not persuaded, therefore, to follow ITT World Communications, Inc.

We are guided by our Circuit's precedents of Firestone Tire and Rubber Company,

and Friedrich, supra. The particular language in Article XXVII – encouraging

settlement of disputes through the machinery of the contract rather than through

"recourse to the courts" – is an aspiration to abide by the parts of the contract that

provide for grievance procedures, which "neither explicitly nor implicitly provide

for" arbitration and are "wholly employee oriented." Cf. Firestone Tire & Rubber

Co., 476 F.2d at 605; Friedrich, 515 F.2d at 227. In this case, the employee

oriented grievance machinery in the parties' contract qualifies and limits the

---

[9] In fairness to the district court, it should be noted that Granite Rock was issued after the district court had decided this case.

14

universe of claims and grievances subject to arbitration, and the language negates the intention that the employer's claim for damages must be submitted to arbitration.

The district court's grant of summary judgment is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.